

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6869 | **DATE** | 12/4/2002 |
| **CASE TITLE** | DONNA GARVIN vs. MOTOROLA, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing held.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Motion to continue pretrial conference and trial date [37-1] is denied as moot. Trial date of 1/7/03 is stricken. Pretrial conference date of 12/17/02 is stricken. ENTER MEMORANDUM OPINION AND ORDER: Defendant Motorola, Inc.'s motion for summary judgment is granted.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | DEC 0 5 2002 date docketed | |
| ✓ | Docketing to mail notices. | | 39 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TBK | courtroom deputy's initials | 02 DEC -4 PM 4:35  U.S. DISTRICT COURT  Date/time received in central Clerk's Office | date mailed notice  mailing deputy initials |

SS-6

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DONNA GARVIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 01 C 6869 |
| v. ) | |
| ) | |
| MOTOROLA, INC., ) | Judge John W. Darrah |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Donna Garvin ("Garvin"), commenced an action against Defendant, Motorola, Inc. ("Motorola"), alleging that she was terminated from her employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"). Before this Court is Motorola's Motion for Summary Judgment.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Garvin began her employment at Motorola in June 1994 through Manpower Temporary Agency. In November 1994, Motorola hired Garvin as a Motorola employee in the distribution center of its Libertyville facility. At the time of her hire, Garvin acknowledged in writing her

understanding that she was an at-will employee of Motorola. (Def.'s 56.1(a)(3) Statement ¶ 5). Shortly after her hire, Garvin transferred to the manufacturing center within the Libertyville facility and assumed the position of Cellular Manufacturing Operator. In 1996, Garvin transferred to the Harvard facility for the same position. (Id., at ¶ 7). In early to mid 1997, Garvin transferred to the Schaumburg facility for the same position. (Id., at ¶ 8).

In June 1998, Motorola implemented its Safe and Respectful Workplace Policy ("SRWP"). The SRWP provides, "Violence or threats of physical harm by or toward any Motorola employee ... will not be tolerated." "A threat includes any act of physical aggression and/or any suggestion which could be perceived as an intent to cause physical harm..." A violation of the SRWP could result in discipline up to and including termination of employment. (Def.'s 56.1(a)(3) Statement ¶ 11). Motorola generally issues either a final written warning or discharge for violations of the SRWP, depending upon the severity of the employee's underlying conduct, as well as any other relevant circumstances. (Id., at ¶ 13).

During Garvin's employment, Motorola maintained a progressive discipline policy. The policy defines the discipline attendant to various types of disciplinary infractions, which are characterized under the policy as Class I, Class II, or Class III infractions. Examples of Class II infractions include disorderly conduct, disregard of safe work procedures, contributing to a hostile or intimidating work environment, and harassment of another employee. Examples of a Class III infraction include disruption of the workplace, theft, unauthorized disclosure of confidential company information, insubordination, and job abandonment. Class III infractions typically result in discharge. (Def.'s 56.1(a)(3) Statement ¶ 12).

From 1999 through the end of Garvin's employment at Motorola, Jolanta Tolwinski

("Tolwinski") was Garvin's direct supervisor. Before Tolwinski's promotion to supervisor in 1999, Garvin and Tolwinski worked side-by-side as coworkers. Bob Hadcock ("Hadcock") directly supervised Tolwinski and other shift supervisors and indirectly supervised Garvin. (Def.'s 56.1(a)(3) Statement ¶ 14).

In Garvin's 2000 performance evaluation, Tolwinski noted that Garvin had demonstrated problems in getting along with her workers. Garvin disagreed with Tolwinski's assessment and wrote a comment on her evaluation to express such disagreement. Garvin felt that Tolwinski had rated her too low with respect to her problems with her coworkers based on Garvin's belief that she had experienced only two "issues" that year relating to problems with coworkers. (Def.'s 56.1(a)(3) Statement ¶ 15). When Garvin met with Tolwinski to discuss her disagreement with the evaluation, Garvin told Tolwinski that the weight given to the problems with coworkers did not reflect what Tolwinski should have understood about Garvin's "character" after having worked side-by-side with her as a coworker. (Id., at ¶ 16). Garvin does not believe that Tolwinski discriminated against her on the basis of her race. (Id., at ¶ 18). Garvin's previous three years' annual performance evaluations indicated an overall satisfactory job performance. (Plaint.'s 56.1(b)(3) ¶ 44)

Later, on September 12, 2000, Garvin and a coworker, Tina Hong ("Hong"), had a confrontation. (Def.'s 56.1(a)(3) Statement ¶ 19). The next day, another coworker, Ed Feldpausch ("Feldpausch"), informed Tolwinski that he had witnessed a confrontation between Garvin and Hong and that Garvin had hit Hong. Tolwinski approached Hong, who confirmed that Garvin hit her. Tolwinski then reported the incident to Hadcock. (Id., at ¶ 20).

Hadcock spoke with Garvin, Hong, and several witnesses to the confrontation. Hong informed Hadcock that she had heard that Garvin was speaking badly of her and that she asked

3

Garvin to stop and told her that she would inform Tolwinski if Garvin did not stop speaking badly of her. She also told Hadcock that Garvin yelled at her to "get away" and hit her on the shoulder. (Def.'s 56.1(a)(3) Statement ¶ 21).

Garvin told Hadcock that Hong approached her, talking and pointing her finger, and that Garvin could not understand what Hong was saying. Garvin admitted that she started yelling at Hong to "get out of my face", and that because she was yelling more loudly than Hong was talking, she could not hear what Hong was saying to her. Garvin learned that others had informed Hadcock that she had hit Hong and denied hitting Hong. Garvin told Hadcock that she had merely flung her arm in the air. Garvin also alleged that, during the confrontation, Hong might "possibly" have pinched her breast. (Def.'s 56.1(a)(3) Statement ¶ 22).[1]

Several of the witnesses interviewed by Hadcock also stated that Garvin hit Hong. No interviewed witnesses reported seeing Hong pinch or in any other way intentionally make physical contact with Garvin. Feldpausch told Hadcock that he saw Garvin shove or hit Hong on the shoulder. Jackie Jackson ("Jackson") also told Hadcock that she saw Garvin hit Hong on the shoulder. (Def.'s 56.1(a)(3) Statement ¶ 24). Following the interviews, Hadcock informed Teryn Kim ("Kim"), a Human Resource Specialist, of the incident between Garvin and Hong. At that time, Kim began her investigation of the incident. (Id., at ¶ 25).

Hadcock also prepared typewritten interview notes of his investigation. Hadcock's notes did not include Sandra Mendenhall's ("Mendenhall") statement to Hadcock that she did not see Garvin touch Hong. However, after Mendenhall informed Hadcock that she did not see Garvin touch Hong

---

[1] At her deposition, Garvin admitted that Hong did not actually make any physical contact with her.

4

Hadcock had completed his investigation. (Plaint.'s 56.1(b)(3) Statement ¶ 49); (Def.'s Response to ¶ 49).

On September 20, 2000, Kim approached Garvin to request an interview with her. Garvin declined Kim's request, stating that she "did not want to rehash the situation [and] didn't want to discuss it anymore". Kim agreed to accept Garvin's description of the incident from the information that Garvin had reported to Hadcock. Kim also informed Garvin that she was being placed on leave without pay pending the investigation of the incident. (Def.'s 56.1(a)(3) Statement ¶ 26). That same day, Kim spoke with Hong about the incident. Hong explained that she had heard that Garvin was talking about her to coworkers and criticizing her job performance and that she approached Garvin to ask her to stop talking about her. Hong told Garvin that, if she did not stop talking about her, she would report her to Tolwinski. Hong told Kim that she had warned Garvin that she had seen her sleeping in the cafeteria for a long time and that she would also tell Tolwinski about such. Hong explained that Garvin then suddenly hit her on the shoulder. Hong denied hitting or otherwise making physical contact with Garvin and that the confrontation ended after she was hit. (Id., at ¶ 27).

On September 21, 2000, Kim interviewed a number of witnesses of the incident. (Def.'s 56.1(a)(3) Statement ¶ 28). Feldpausch told Kim that he saw Garvin hit Hong and that he did not see Hong do anything in response. (Id., at ¶ 29). Jackson observed Garvin slap or push Hong's hand with such force that it jerked Hong's shoulder. She also observed Hong move forward and unintentionally, reflexively tapped her hand on Garvin as she was attempting to balance herself. Jackson did not see Hong hit Garvin. (Id., at ¶ 30). Denise Tucker, who initially told Hadcock that she had not seen Garvin strike Hong, admitted to Kim that she saw Garvin push Hong's finger out

of the way while yelling, "Get out of my face". She also saw Hong do the same thing to Garvin. (Id., at ¶ 31). Kim did not interview Mendenhall. (Plaint.'s 56.1(b)(3) Statement ¶ 51).

Following her investigation, Kim presented her findings to a case management team consisting of Human Resource professionals who regularly meet by telephone and work together to ensure that Motorola's policies are consistently and uniformly implemented, utilized, and enforced. (Def.'s 56.1(a)(3) Statement ¶ 33). The case management team concluded that Garvin had hit Hong in direct violation of the SRWP and unanimously recommended that her employment be terminated. (Id., at ¶ 34). Consistent with the team's recommendation, and pursuant to Motorola's progressive discipline policy, Kim decided to terminate Garvin's employment. Kim believed, based on her investigation, that Garvin had physically assaulted Hong in violation of Motorola's policy. (Id., at ¶ 35). On September 26, 2000, Kim notified Garvin that she was terminated as of that date because Motorola believed that she had hit Hong. (Id., at ¶ 36).

Garvin appealed her discharge to Michelle Bradtke, a Human Resource Administrator, to reverse the decision. The decision was upheld, and Garvin did not further pursue her appeal. (Def.'s 56.1(a)(3) Statement ¶ 37). Garvin admits that Motorola employees are generally given write-ups and/or are fired if a confrontation occurs at work. She further admits that Motorola fires employees if they hit each other and that her termination would be warranted if Motorola believed that she did, in fact, hit Hong. (Id., at ¶ 42).

Kim also presented Hong's case to a case management team. The team recommended that Hong receive a final written warning. The team based its recommendation upon its conclusion that Hong's comments and behavior had contributed to the confrontation and, therefore, contributed to a hostile environment in violation of Motorola's policy. (Def.'s 56.1(a)(3) Statement ¶ 38).

6

Consistent with the team's recommendation, Kim decided to issue a final written warning to Hong. She decided to issue that discipline to Hong because she found that Hong had contributed to the confrontation with Garvin. However, she did not believe that there was any proof that Hong had physically assaulted Garvin. (Id., at ¶ 39).

Garvin concedes that she does not have direct evidence of discrimination and that she must proceed under the indirect method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973). In order to establish a *prima facie* case under the indirect method, the plaintiff is required to show that: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) that other similarly situated employees not in the protected class were treated more favorably. *See Jones v. Union Pacific R.R. Co.*, 302 F.3d 735, 741 (7th Cir. 2002). If the plaintiff meets this burden, then the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for its action. *See Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 545 (7th Cir. 2002) (*Peters*). If defendant meets this burden, the burden shifts back to the plaintiff to show that the proffered reason "was not its true reason, but was a pretext – 'a dishonest explanation, a lie rather than an oddity or an error'". *Peters*, 307 F.3d at 545, quoting *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000).

Motorola concedes that Garvin has established and the first and third prongs of a *prima facie* case. As to the second and fourth prongs of the test, Garvin concedes that she had a confrontation with Hong and that she was disciplined for that confrontation. The basis of Garvin's discrimination claim is that Motorola applied its legitimate employment expectations in a disparate manner -- Motorola applied its expectations to a similarly situated employee, Hong, in a more favorable

7

manner by firing Garvin and only giving Hong a final warning for the same incident. Under such a case, the second and fourth prongs of the *McDonnell Douglas* test merge. *See Peele v. Country Mutual Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002); *Curry v. Menard, Inc.*, 270 F.3d 473, 479 (7th Cir. 2001); *Flores v. Preferred Tech. Group*, 182 F.3d 512, 515 (7th Cir. 1999).

A plaintiff demonstrates that another employee is "similarly situated" to her by "show[ing] that there is someone who is directly comparable to her in all material aspects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). A court must look at all relevant factors, the number of which depends on the specific case, when making this determination. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000) (*Radue*). In disciplinary cases in which the plaintiff alleges that she was disciplined more harshly than a similarly situated employee, the plaintiff must show that she is similarly situated with respect to performance, qualifications, and conduct. *See Radue*, 219 F.3d at 617. "This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue*, 219 F.3d at 617-18.

In the instant case, both Garvin and Hong had the same supervisor, were subject to the same standards, and engaged in the same incident. However, the case management team and Kim concluded that Garvin's conduct was more serious because she struck Hong and Hong did not strike Garvin. The conclusion that Garvin struck Hong and that such assault was more serious than Hong's conduct during the incident demonstrates that Garvin and Hong are not similarly situated in all aspects. *See Spath v. Hayes Wheels International-Indiana, Inc.*, 211 F.3d 392, 397 (7th Cir. 2000) (plaintiff who lied about circumstances surrounding accident until termination meeting was not

similarly situated to coworker who rescinded his false statement about the incident sooner - conduct not of "comparable seriousness"); *Crosby v. Federal Signal Corp.*, 1998 WL 603125 at * 6 (N.D. Ill. Sept. 4, 1998) (plaintiff and coworker that engaged in confrontation not similarly situated because plaintiff engaged in physical contact during the confrontation). Accordingly, Garvin has failed to show that other similarly situated employees not in the protected class were treated more favorably, and she has failed to establish a *prima facie* case of discrimination.

Assuming argumendo, that Garvin had presented a *prima facie* case, she has failed to demonstrate that Motorola's proffered reason for terminating her employment was a pretext to discrimination.

Motorola asserts that it terminated Garvin's employment because she struck Hong during the incident in violation of company policy. To demonstrate that Motorola's articulated reason for her discharge was pretext, Garvin must show that Motorola's reason for her discharge either: (1) had no basis in fact; (2) was insufficient to motivate her discharge; or (3) did not actually motivate her discharge. *See Velasco v. Illinois Dept. of Human Serv.*, 246 F.3d 1010, 1017 (7th Cir. 2001).

Garvin asserts that evidence of pretext include: (1) Hadcock's animus toward third-shift African-American workers; (2) Hadcock's "concealment" of Mendenhall's favorable statement from Kim; (2) failure to utilize a Situation Assessment Team in the SRWP; and (3) the difference in discipline received between her and Hong.

Garvin asserts that Hadcock has animus toward African-Americans as demonstrated by his reduction and elimination of flex-time scheduling opportunities for the predominantly Africa-American third shift. However, Garvin conceded, at her deposition, that Hadcock also reduced and eliminated flex-time scheduling for all employees because he believed that the privilege was being

9

abused.

Garvin also asserts that Hadcock concealed Mendenhall's statement that she did not see Garvin strike Hong and that such concealment evidences pretext to discrimination. However, Mendenhall made the statement after Hadcock had finished his report, and the report already included a statement by another coworker that Garvin did not strike Hong. Furthermore, Mendenhall stated that she did not see Garvin strike Hong; however, Mendenhall also stated that she did not see the entire incident. Lastly, Hadcock was not involved in the decision to terminate Garvin. Kim conducted her own independent investigation. Accordingly, Hadcock's conduct does not demonstrate pretext.

Garvin also asserts that Motorola's failure to have a Situation Assessment Team ("SAT") review the incident between her and Hong evidences pretext. However, Motorola has interpreted the SRWP as not requiring a SAT meeting for every incident. Instead, a SAT meeting is a resource that the Human Resource Department may utilize at their discretion. In the present case, Kim did not believe that a SAT meeting was necessary, in large part because Garvin had been suspended and sent home the day the investigation began. Instead, Kim utilized a similar resource, a case management team, which, like a SAT meeting, reviewed the incident and made a recommendation. Furthermore, the failure to follow the policy to the letter is insufficient to demonstrate pretext and defeat summary judgment. *See Kohl v. Beverly Enter. Wis., Inc.*, 259 F.3d 799, 806 (7th Cir. 2001) (rejecting plaintiff's argument that employer's failure to follow written discipline policies showed pretext); *Kipnis v. Baram*, 949 F. Supp. 618, 623 (N.D. Ill. 1996) (evidence that employer may not have followed complaint procedure did not support plaintiff's discrimination claim absent evidence that employer's departure from procedure was motivated by discriminatory animus).

Lastly, Garvin asserts that the unequal discipline evidences pretext. Garvin's assertion ignores that the case management team and Kim found that Garvin's conduct was more serious because it concluded that Garvin struck Hong. While Garvin takes issue with this decision, the court will not second guess an employer's decision, regardless of whether it is correct in its belief, if an employer acted in good faith and with honest belief. *See Kariotis v. Navistar Int'l Trans. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997). The undisputed facts demonstrate that after an investigation and review by a case management team, Motorola concluded that Garvin struck Hong. Garvin must provide more than her unsupported pronouncement that Motorola was mistaken. *See Green v. National Steel Corp.*, 197 F.3d 894, 898-99 (7th Cir. 1999) (plaintiff must provide more than her statement that defendant was mistaken). Based on the above, Garvin has failed to show that Motorola's proffered reason for Garvin's termination was pretext to discrimination.

Motorola argues that summary judgment is proper for Garvin's Section 1981 claim because Garvin has conceded that she is an at-will employee. Garvin did not address her Section 1981 claim in her response to Motorola's Motion for Summary Judgment.

Whether an at-will employee can, as a matter of law, bring a Section 1981 claim against an employer is an issue in dispute in this district. The Seventh Circuit has not ruled on the issue. *See Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1035 (7th Cir. 1998) (*Gonzalez*). Like the *Gonzalez* court, this Court need not decide the issue because if the Court were to allow Garvin's Section 1981 claim to stand, based on a finding that Garvin had a contractual relationship with Motorola, her claim would fail for the same reasons as her Title VII claim. The same standards governing liability under Title VII apply to a Section 1981 claim. *Gonzalez*, 133 F.3d at 1035. As in her Title claim, Garvin has provided no direct evidence of discrimination and did not demonstrate

she was treated differently than a similarly situated employee. Furthermore, even if she had established a *prima facie* case, she failed to provide evidence contradicting Motorola's nondiscriminatory reason for her termination. Accordingly, Garvin's Section 1981 claim also fails.

For the reasons stated, Motorola's Motion for Summary Judgment is granted.

Dated: December 4, 2002

JOHN W. DARRAH
United States District Judge